Martin W. Aron Bar ID # 036011984
Bianca M. Olivadoti Bar ID # 112962014
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(973) 795 - 5200
*ATTORNEYS FOR DEFENDANTS*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SCOTT THARES, | : | |
| | : | Civil Action No.: |
| Plaintiff, | : | |
| | : | **NOTICE AND PETITION FOR** |
| v | : | **REMOVAL OF CASE FROM THE** |
| | : | **SUPERIOR COURT OF NEW JERSEY,** |
| NFP PROPERTY & CASUALTY | : | **LAW DIVISION, BERGEN COUNTY** |
| SERVICES, INC. and NFP CORP., | : | |
| | : | |
| Defendants. | : | |

Defendants, NFP Property & Casualty Services, Inc. and NFP Corp. ("Defendants"), pursuant to 28 U.S.C. §§ 1332 and 1446, respectfully submit this notice and petition for removal of a case from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-004902-21, and, as grounds for removal, alleges as follows:

1.  On or about July 23, 2021, Plaintiff Scott Thares ("Plaintiff") filed a civil action captioned <u>Scott Thares v. NFP Property & Casualty Services, Inc. and NFP Corp.</u>, Docket No. BER-L-004902-21, in the Superior Court of New Jersey, Law Division, Bergen County. A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.  Defendants accepted services of the summons and complaint on August 19, 2021. The summons and complaint were the initial pleadings received by Defendants setting forth the claims upon which Plaintiff's action is based.

3.  This notice and petition is timely filed within the provisions of 28 U.S.C.

§ 1446, as Defendants have effected removal within thirty (30) days of receipt by them of a paper from which it could first be ascertained that this action is removable. See 28 U.S.C. § 1446. All Defendants consent to removal.

    4.    No proceedings have taken place in the state court action. Defendants have not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

    5.    This action is removable to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as it involves a controversy between citizens of different states:

    a.    Plaintiff is, and has been, both upon the filing of the subject Complaint on July 23, 2021, and at the time of filing of this removal petition, a resident of the State of New Jersey. (See Exhibit A at ¶ 12).

    b.    Defendant NFP Property & Casualty Services, Inc. is, and has been, both upon the filing of the subject Complaint on July 23, 2021, and at the time of filing of this removal petition, incorporated in New York with its principal place of business located in that State.

    c.    Defendant NFP Corp. is, and has been, both upon the filing of the subject Complaint on July 23, 2021, and at the time of filing of this removal petition, incorporated in Delaware with its principal place of business located in New York.

    6.    As set forth in the Complaint, Plaintiff alleges the following causes of action: (1) failure to promptly pay wages under the Wage Theft Act ("WTA") and (2) failure to pay wages upon termination under the WTA. Plaintiff's Complaint alleges damages "in excess of $1,200,000." (See Exhibit A at ¶ 55). Plaintiff also seeks "200% liquidated damages on the

amount due, interest, and reasonable attorneys' fees." (See Exhibit A, ¶¶ 64, 72). Thus, the entire amount in controversy contemplates an amount exceeding the sum of $75,000, which is the jurisdictional threshold set by 28 U.S.C. § 1332.

7. Because there is complete diversity between the parties and the amount in controversy is in excess of $75,000, this Court has original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332.  This action is properly removable to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441(b), (c).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

9. Defendants file this Notice of Removal without waiving any defense to Plaintiff's claims or conceding that Plaintiff has pled claims upon which relief can be granted.

10. Pursuant to 28 U.S.C. § 1446(d), Defendants have given written notice of the removal of this action to all adverse parties and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

**WHEREFORE**, Defendants respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Bergen County, be removed to the United States District Court for the District of New Jersey.

                              Respectfully submitted,

                              JACKSON LEWIS P.C.

By:   *s/ Martin W. Aron*
       Martin W. Aron
       Bianca M. Olivadoti
       *ATTORNEYS FOR DEFENDANTS*

Dated: September 20, 2021
4836-7430-9882, v. 1

# EXHIBIT A

J.R. Stevenson - 041822007
STEVENSON MARINO LLP
75 Maiden Lane, Suite 402
New York, New York 10038
Phone: (212) 939-7588
*Attorneys for Plaintiff*

| | |
|---|---|
| SCOTT THARES, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | **DOCKET NO:** |
| -against- | **COMPLAINT** |
| NFP PROPERTY & CASUALTY SERVICES, INC., and NFP CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Scott Thares ("Thares" or "Plaintiff"), by and through his attorneys, STEVENSON MARINO LLP, files this Complaint against the Defendants NFP PROPERTY & CASUALTY SERVICES, INC. and NFP CORP. (collectively, as "NFP" or the "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

## INTRODUCTION

1. This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights including (i) violations of the New Jersey Wage Payment Law, as amended by the Wage Theft Act ("WTA"), N.J.S.A. § 34:11-4.1 *et seq.*; and (ii) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff is a former employee of Defendants, who Defendants terminated on or about March 1, 2020. At the time of Plaintiff's termination, Plaintiff was owed in excess of

1

$1,200,000 in earned commissions, and to date, Defendants have refused to pay Plaintiff his earned commissions. As described below, Defendants' failure to pay Plaintiff his earned commissions violated the WTA.

## VENUE

3. At all relevant times herein, Plaintiff worked for Defendants in New Jersey and was an "employee" entitled to protection as defined by the WTA.

4. Venue for this action is proper in the County of Bergen pursuant to *Rule* 4:3-2, in that venue is properly laid in the county in which the cause of action arose.

## PARTIES

*Defendants*

5. At all relevant times herein, Defendant NFP PROPERTY & CASUALTY SERVICES, INC., is a domestic business corporation organized and existing by virtue of the laws of the State of New York.

6. At all relevant times herein, Defendant NFP PROPERTY & CASUALTY SERVICES, INC. maintained a principal place of business at 340 Madison Avenue, 20th Floor, New York, New York 10173.

7. At all relevant times herein, Defendant NFP CORP., is a foreign corporation organized and existing by virtue of the laws of the State of Delaware.

8. At all relevant times herein, Defendant NFP CORP. maintained a principal place of business at 340 Madison Avenue, 20th Floor, New York, New York 10173.

9. At all relevant times herein, Defendant NFP CORP. was the parent entity of Defendant NFP PROPERTY & CASUALTY SERVICES, INC.

10. At all relevant times herein, Defendants have been engaged in the insurance brokerage business and transact substantial business within the State of New Jersey.

11. Defendants are covered employers within the meaning of the WTA and, at all relevant times, employed the Plaintiff.

*Plaintiff*

12. Plaintiff Thares is an adult individual over the age of eighteen, who presently resides, and at all relevant times herein resided, in the State of New Jersey.

13. At all relevant times herein, Plaintiff is considered a "person" and an "employee" entitled to protection as defined by the WTA.

## BACKGROUND FACTS

14. Plaintiff Thares has been working in the insurance brokerage industry for approximately 31 years.

15. In September of 2016, Plaintiff Thares began working for NFP Defendants.

16. In or around September of 2018, there was a restructuring of NFP, and Plaintiff was promoted to the position of Vice President/Director of Transportation and was provided with a new employment agreement (the "2018 Employment Agreement").

17. Pursuant to the 2018 employment agreement, Plaintiff Thares was to be paid a base salary of $60,000 plus "40% commissions on New Business and 25% commissions on Renewal Business."

18. Around the same time, Thares' began to focus his efforts on the transportation and trucking industries.

19. Specifically, Thares began specializing in placing insurance for what is characterized as distressed trucking companies throughout the country.

20. Thares would place insurance for trucking companies that traditional insurance companies could not or would not insure.

21. In order to obtain insurance coverage for these transportation companies, Thares would obtain insurance through different state's assigned risks programs.

22. This process of underwriting was extremely specialized and cumbersome because Thares was required to be licensed in and attend classes to learn how to underwrite per the different state-assigned risks programs.

23. Thares' skill set proved valuable, and he began generating business through other NFP offices throughout the country.

24. In June of 2019, Defendants failed to timely pay Thares commission on several accounts that he had written.

25. When Thares inquired as to why he had not received his commission, Thares was told by Michael Walsh, Defendant's Regional Sales Manager and Executive Vice President, that the commissions were delayed because the commissions would first be sent to the originating office and then transferred to Thares' office.

26. Around the same time, in July of 2019, Thares was called into the office of the Regional Vice President, Robert Barlow, who explained to Thares that he had just received an account that NFP has been trying to write for the past 6 months, but no one could find coverage for it. Mr. Barlow asked Thares if he could obtain coverage for the account.

27. The account was for a business based in Arizona that operated airport shuttles at locations all across the country.

4

28. Thares was given less than forty-five (45) days to write the account that consisted of 2,500 buses throughout the country. Every state had to be underwritten separately as every state's pricing is different. This was a herculean effort.

29. NFP requested that Thares attempt to place the coverage with a September 1st inception date. Thares was required to perform almost all of the work.

30. On accounts written through state assigned risk plans, everything must be done manually. This meant that Thares had to write 2,500 vehicle descriptions including; (1) Make; (2) Model; (3) Vin #; and (4) Descriptions of routes.

31. Additionally, for each driver, Thares had to perform a detailed search of their driving record for accidents and/or violations because every violation or accident affects pricing.

32. In order to get the work done to timely place this account, Thares arrived at the office between 4:00 and 4:30 am and left no earlier than 10:00 pm, working this schedule six (6) or seven (7) days per week.

33. Ultimately, NFP was able to place the account with a premium of roughly $15,000,000 for Auto Liability alone. The Physical Damage, Workers Compensation and General Liability coverages were all also placed by Thares and were additional.

34. Once the coverage quote was obtained, NFP financed it through First Insurance Funding.

35. The account included a $1,000,000 "fee" for writing to be paid to NFP, of which Plaintiff was to be paid 40%.

36. The account generated approximately $1,500,000 in commission, of which Plaintiff was entitled to receive 40%.

5

37. Plaintiff was advised that he would not see the 40% from the commission for approximately ninety (90) because the state sends NFP the commission checks after coverage is finalized.

38. In October, Plaintiff was issued an advance towards his approximate $1,000,000 commission in the amount of $115,000 and was told that he would receive the rest within the next sixty (60) days.

39. Around the same time, Plaintiff was requested to attempt to place another large account for a transportation company that operated one of the largest "last mile delivery" services for Amazon.

40. The company which was based in Georgia operated approximately 1,500 vans across thirty (30) states.

41. Accordingly, Thares went back to working approximately 15-hour days for roughly six (6) or seven (7) days a week.

42. After placing coverage for this account and working arduous hours, Thares ended up in the hospital for approximately one week.

43. After spending approximately one week in the hospital, Thares returned to work.

44. Despite NFP receiving the premiums based on Thares's work, NFP willfully, with the intent to hold wages that were rightfully due to Thares, refused to pay Thares the commission that was due to and earned by him.

45. In addition, Defendants failed to pay Thares all commission that was due to and earned by him for multiple other accounts.

46. Despite numerous inquiries regarding the outstanding commission owed to him, Thares did not receive any payment on the outstanding commissions.

6

47. On Friday December 13, 2019, Plaintiff received a paycheck that contained a $3,949.44 post-tax deduction marked with code "Box 12 Code DD."

48. When Plaintiff asked his boss, Michael Walsh, the reason for the deduction, Mr. Walsh claimed he had no idea and instructed him to call payroll.

49. Plaintiff called the payroll department, however, the payroll department never returned his call.

50. Finally, after speaking with human resources, Plaintiff was advised that NFP would pay the difference in his next pay-check, which never happened. In fact, Defendants continued to make unlawful deductions each pay-period.

51. NFP never sent Plaintiff anything in writing, and never verbally advised Plaintiff what the unlawful deduction was for.

52. Unfortunately, despite the fact that no one at NFP would speak to Plaintiff regarding his paycheck, Plaintiff was not in a position to quit as Plaintiff was in desperate need for health insurance benefits, as he had recently been hospitalized.

53. On or about March 1, 2020, Plaintiff and another broker, Greg Oliva, were terminated and walked out of the office without explanation.

54. Plaintiff was told that he would technically remain an employee of NFP until June of 2020.

55. At the time of Plaintiff's termination, Plaintiff was owed in excess of $1,200,000 in outstanding commission.

56. Plaintiff has never been paid his outstanding commission, despite (1) NFP having received all premiums due, and (2) Plaintiff having performed all functions and responsibilities to earn his commissions.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Promptly Pay Wages Under the WTA*

57. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

58. The New Jersey WTA, § 34:11-4.2, requires that employers promptly pay employees their wages owed, including commissions owed, at least twice during each calendar month or on regular paydays designated in advance by the employer.

59. As described above, Defendants are employers within the meaning of the WTA, while Plaintiff is an employee within the meaning of the WTA.

60. As also described above, Defendants and Plaintiff had an agreement to pay Plaintiff's wages according to a well-established schedule, Defendants failed to pay Plaintiff his commissions due, and wrongfully made deductions to his wages.

61. Plaintiff's commissions constitute wages under the WTA.

62. Plaintiff is entitled to be paid in a timely fashion and Defendants are required to promptly pay Plaintiff his wages.

63. Defendants failed to pay Plaintiff his wages and thus violated the WTA.

64. Plaintiff is also entitled to 200% liquidated damages on the amount due, interest, and reasonable attorneys' fees for Defendants' violations of the WTA's provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Pay Wages Upon Termination Under the WTA*

65. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. The New Jersey WTA, § 34:11-4.3, requires that whenever an employer discharges an employee, the employer shall promptly pay the terminated employee all outstanding wages

8

owed, including commissions owed, not later than the regular payday for the pay period during which the employee's termination took place.

67. As described above, Defendants are employers within the meaning of the WTA, while Plaintiff is an employee within the meaning of the WTA.

68. As also described above, Defendants terminated Plaintiff and subsequently failed to pay Plaintiff his commissions due during the pay period that the termination took place.

69. Plaintiff's commissions constitute wages under the WTA.

70. Plaintiff is entitled to be paid in a timely fashion and Defendants are required to promptly pay Plaintiff his wages upon his termination.

71. Defendants failed to pay Plaintiff his wages and thus violated the WTA.

72. Plaintiff is also entitled to 200% liquidated damages on the amount due, interest, and reasonable attorneys' fees for Defendants' violations of the WTA's provisions.

## **DEMAND FOR A JURY TRIAL**

73. Plaintiff demands a trial by jury on all causes of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, is entitled to and prays for the following relief:

a. An award of all unpaid wages and unpaid commissions;

b. An award of liquidated damages as a result of Defendants' willful failure to promptly compensate Plaintiff in the amount of 200% of actual unpaid wages and commissions;

c. An award of pre-judgment and post-judgment interest;

d. An award of costs and expenses of this action together with reasonable attorneys' fees; and

  e. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
   July 23, 2021

                Respectfully submitted,

                Stevenson Marino LLP
                75 Maiden Lane, Suite 402
                New York, New York 10038
                Tel: (212) 939-7588
                Fax: (212) 531-6129

           By: /s/ J.R. Stevenson
              J.R. Stevenson

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-004902-21

**Case Caption:** THARES SCOTT VS NFP PROP. & CAS. SER VS. INC.
**Case Initiation Date:** 07/23/2021
**Attorney Name:** JOHN RUSSELL STEVENSON
**Firm Name:** STEVENSON MARINO LLP
**Address:** 75 MAIDEN LANE STE 402
NEW YORK NY 10038
**Phone:** 2129397588
**Name of Party:** PLAINTIFF : Thares, Scott
**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** EMPLOYMENT (OTHER THAN CEPA OR LAD)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Scott Thares?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
  If yes, please identify the requested accommodation:

**Will an interpreter be needed?** NO
  If yes, for what language:

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/23/2021
Dated

/s/ JOHN RUSSELL STEVENSON
Signed